UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENSILO, INC., | |
| *Plaintiff*, | Civil Action No. _____ |
| v. | |
| SECURITY VALIDATION LLC, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| *Defendant*. | |

Plaintiff enSilo, Inc. ("enSilo" or "Plaintiff"), by and through its undersigned counsel, Pearl Cohen Zedek Latzer Baratz LLP, by way of its Complaint against Defendant Security Validation LLC ("Security Validation" or "Defendant"), respectfully alleges and submits as follows pursuant to Rule 3 of the Federal Rules of Civil Procedure:

## THE PARTIES

1. Plaintiff enSilo is a Delaware corporation with its principal place of business in California.

2. Defendant Security Validation, LLC is a New Jersey corporation with its principal place of business in New Jersey.

## NATURE OF THE ACTION

3. This is an action for breach of contract and unjust enrichment.

## JURISDICTION AND VENUE

4. enSilo is a citizen of Delaware and California. Security Validation is a citizen of New Jersey.

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

6. Section 14.4 of the Parties' Non-Exclusive Reseller Agreement ("the Agreement"), which governs this dispute, provides that "This Agreement and the entire relationship between the Parties shall be governed by and construed in accordance with the laws of the [sic] New York exclusive of its conflict of laws principles.  Any dispute arising under or relating to this Agreement shall be resolved in and subject to the exclusive jurisdiction of the courts located in New York County, and the parties hereby expressly consent to such jurisdiction and venue, and waive any jurisdictional, venue or inconvenient forum objections with respect thereto."

7. This Court has personal jurisdiction over Defendant due to its substantial contacts in New York, including its assent to the Agreement, pursuant to which Defendant waived any "jurisdictional … objections."

8. Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(3) and (c)(2) because Defendants are subject to personal jurisdiction in this judicial district, pursuant to 28 U.S.C. § 1391(b)(2) because, upon information and belief, a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this judicial district, and according to Section 14.4 of the Agreement.

## STATEMENT OF FACTS

9. Plaintiff is a growing start-up that provides endpoint security, even after malware has infected endpoints.

10. Defendant purports to provide cybersecurity services.

### A.     The Agreement

11.     Beginning on or around December 23, 2016, the parties began entering into contractual agreements whereby enSilo agreed to provide licenses to Security Validation, for which it agreed to pay.

12.     On December 29, 2016, the parties entered into the Agreement governing their relationship.  Under the Agreement, Security Validation acted as a reseller of enSilo's licenses.  Once Security Validation acquired a customer and paid enSilo, enSilo would provide Security Validation with a license key, which it would provide to the customer in order to activate the license.  *See* Exhibit A (the Agreement) at Section 6.1.

13.     The Agreement provides that Security Validation "is responsible for the collection of all sums due from Customers at [Security Validation's] expense." *See id.* at Section 6.3.

14.     Pursuant to the Agreement, Defendant was required to "pay the Fees to [Plaintiff] in U.S. Dollars within thirty (30) days of issuance of Company invoice therefor.  Any amounts payable by [Defendant] hereunder which remain unpaid after the due date as set forth in Section 6.4 shall be subject to the payment of interest in an amount equal to one and one-half percent (1.5%) per month (or the highest amount permitted by law, if less), accruing from the due date until the amounts due and payable hereunder are paid to Company in full." *See id*. at Section 6.4.

15.     The Agreement also provided that the Agreement would be effective for a period of one-year, and then would automatically renew for successive one (1) year terms subject to any party providing unilateral, written notice within 90 days.  *See id.* at Section 9.1.

16.     Any termination of the Agreement, Section 9.3, required Security Validation to "pay [enSilo] all amounts due and outstanding hereunder in accordance with the terms of this

Agreement but not later than thirty (30) days from the last day of the month in which termination or expiration is effective". *See id*. at Section 9.3.

### B.   The Six License Agreements

17.   Between December 23, 2016 and May 29, 2018, the parties entered into six separate, *non-cancelable* license agreements whereby enSilo agreed to provide licenses and Security Validation agreed to pay enSilo for these licenses.

   i. <u>On or about December 22, 2016 (the "First Order")</u>: Security Validation and enSilo agreed to the first license order wherein Security Validation agreed to pay $100,000.00 for 5,000 licenses to start February 22, 2017 and expire after twelve months. Payment was to be made monthly. *See* Exhibit B (Excel spreadsheet reflecting summary of invoices issued).

   ii. <u>On or about March 16, 2017 (the "Second Order")</u>: Security Validation and enSilo agreed to the second license order wherein Security Validation agreed to pay $140,000.00 for 7,000 licenses to start May 16, 2017 and expire after twelve months. Payment was to be made monthly. *See id.*

   iii. <u>On or about June 30, 2017 (the "Third Order")</u>: Security Validation and enSilo agreed to the third license order wherein Security Validation agreed to pay $250,000.00 for 12,000 licenses to start September 30, 2017 and expire after twelve months. Payment was to be made monthly. *See id.*

   iv. <u>On or about August 24, 2017 (the "Fourth Order")</u>: Security Validation and enSilo agreed to the fourth license order wherein Security Validation agreed to pay $100,000.00 for 5,000 licenses to start September 1, 2017

and expire after twelve months.  Payment was to be made monthly.  *See id.*

v. <u>On or about December 29, 2017 (the "Fifth Order")</u>: Security Validation and enSilo agreed to the fifth license order wherein Security Validation agreed to pay $100,000.00 for 5,000 licenses to start January 31, 2018 and expire after twelve months.  Payment was to be made monthly.  *See id.*

vi. <u>On or about June 7, 2018 (the "Sixth Order")</u>: Security Validation and enSilo agreed to the sixth license order wherein Security Validation agreed to pay $6,600.00 for 400 licenses to start September 1, 2018 and expire after 9 months.  Payment was to be provided immediately.  *See id.*

**C.     Security Validation Repeatedly Failed to Remit Payment**

18.     enSilo regularly sent accurate invoices and communicated with Security Validation regarding Security Validation's obligation to pay those invoices.

19.     On or about August 1, 2017, Security Validation's CEO David Durko ("Durko") finally replied to enSilo's repeated requests for payment by noting that he had not seen the emails, as they had been caught "in his junk folder" but would pay all unpaid invoices as soon as possible.

20.     Security Validation did not make the promised payments.

21.     enSilo continued to abide by its contractual obligations to provide valid, effective licenses to Security Validation.

22.     On or about January 1, 2018, enSilo sent Durko an email a month and a half prior to the renewal of the First Order with a master invoice outlining all amounts owed.

5

23. Durko agreed that the master invoice was an accurate representation of the balance Security Validation owed and suggested a payment plan that he would ultimately "true up the remaining numbers" by May 2018. enSilo responded, rejecting this proposal, and requiring higher monthly amounts be paid to begin paying down the more than $300,000.00 owed at that point.

24. On or about March 20, 2018, Durko promised to begin paying down the balance and stated that he had initiated a wire transfer.

25. This wire transfer was never initiated and never occurred.

26. enSilo asked Durko about the wire transfer at least twice. When Durko finally responded on or about April 3, 2018, Durko replied that he would wire the first payment the next day, saying: the "Last thing I want to do is take any more advantage of enSilo." He also said that the first payment would be low but provided assurances that he would be making regular payments.

27. During this time, enSilo continued to provide technical support and assistance on the active licenses.

28. On or about April 4, 2018, enSilo notified Security Validation that enSilo would have to suspend its license environments if Security Validation did not remit at least an initial payment.

29. Security Validation requested to terminate the contract on April 4, 2018, allow all licenses to expire, and present a payment plan for the owed amounts.

30. On or about April 4, 2018, Security Validation made a $15,000.00 payment to enSilo, with an outstanding balance of, by May 11, 2018, at least $499,998.00.

31. By August 30, 2018, enSilo provided Security Validation written reminders that the particular licenses would be expiring.

32. On or about October 5, 2018, enSilo notified Security Validation that on October 9, 2018, expired licensed products would be deactivated due to Security Validation's failure to remit payment by September 28, 2018.

33. On or about October 9, 2018, these expired licensed products were deactivated.

34. To date, Security Validation has paid only $15,000.00 of its total amount owed of $696,600.00.  *See* Exhibit B.

35. To date, Security Validation owes a total outstanding balance of $664,933.33. *See id.*

## FIRST CAUSE OF ACTION
### Breach of Contract

36. Plaintiff incorporates herein the allegations set forth in Paragraphs 1 through 35 above.

37. Plaintiff and Defendant, their agents, employees and/or representatives entered into the Agreement by which Plaintiff agreed and became obligated to provide license keys and Defendant agreed and became obligated to pay Plaintiff the cost of those licenses.

38. The Agreement is a valid and binding contractual agreement executed by enSilo and Security and is enforceable in accordance with its terms.

39. The License Orders and attendant invoices are valid, binding, and accurate agreements enforceable in accordance with their terms.

40. Under the License Orders and Agreement, Security Validation was required to pay enSilo all amounts in monthly payments, or upfront for the Sixth Order.

41. enSilo fully complied with the terms of the Agreement, including by providing technical support, and timely, accurate invoices.

42. Security Validation has not remitted payment in full.

43. To date, at least $664,933.33 remains due and owing to enSilo.

44. Due to the foregoing, and as a direct and proximate result of the Defendant's breach of contract, Plaintiff has suffered damages in an amount at least equal to $644,933.33, to be determined at trial.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

45. Plaintiff incorporates herein the allegations set forth in Paragraphs 1 through 35 above.

46. Security Validation remains in possession of monies belonging and/or owed to the enSilo, at least in the amount of $664,933.33, despite enSilo's demands for – and Security Validation's assurance of – payment.

47. By reason of the foregoing, Defendant wrongfully accepted the benefits of $664,933.33 and has been, and continues to be, unjustly enriched at the detriment of the Plaintiff.

48. As such, as a direct and proximate result of Defendant's unjust enrichment, Plaintiff is entitled to an amount at least equal to $664,933.33, to be determined at trial.

**WHEREFORE**, Plaintiff respectfully demands relief against Defendant including, but not limited to, the following:

A. On its First Cause of Action for breach of contract against Defendant in the sum of $664,933.33 plus interest together with the costs and disbursements of this action;

B. On its Second Cause of Action for unjust enrichment against Defendant in the sum of $664,933.33 plus interest together with the costs and disbursements of this action;

C. An award of pre-judgment and post-judgment interest; and

D. An award of all costs, expenses, disbursements, and attorney's fees incurred in this action; and

E. Any other or further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. Civ. P. 38, Plaintiff requests a jury trial as to all counts in this Complaint on all issues so triable.

Dated: January 9, 2019
      New York, New York

      Respectfully submitted,

      PEARL COHEN ZEDEK LATZER BARATZ LLP

      */s/*    Guy Yonay
      Guy Yonay (GY 3028)
      Sarah Benowich (SB 1991)
      1500 Broadway, 12th Floor
      New York, New York 10036
      Tel: (646) 878-0800
      Fax: (646) 878-0801

      *Attorneys for Plaintiff,*
      *enSilo, Inc.*