# EXHIBIT



DocuSign Envelope ID: EA038A75-9B15-4197-B83A-5F70AA5B0795

## NON-EXCLUSIVE RESELLER AGREEMENT

THIS NON EXCLUSIVE RESELLER AGREEMENT ("**Agreement**") is entered into this __ day of December, 2016 (the "**Effective Date**") by and between enSilo Inc., a US company, having its principal offices at 2600 El Camino Real, STE 601, Palo Alto, CA, 94306 (the "**Company**" or "**enSilo**") and Security Validation Inc, a US company with offices at _ Fairfield New Jersey (the "**Reseller**" or "**Security Validation**") (each a "**Party**", and collectively, the "**Parties**").

In consideration of the promises and the mutual agreements set forth herein, and intending to be legally bound, the Parties hereby agree as follows:

1. **Definitions**

1.1. "**Customer**" means an individual or entity which purchases a license to the Platform in the Territory for its own internal use but not for resale or distribution.

1.2. "**Documentation**" means documentation provided by Company to Reseller from time to time relating to the use of the Platform, including training manuals or other instructional materials.

1.3. "**End User License Agreement**" means Company's standard license agreement which governs each Customer's right to use the Platform, as amended by Company in its sole discretion from time to time.

1.4. "**License Key**" means the code provided to Reseller by Company for the activation of the Platform.

1.5. "**Platform**" means Company's real-time targeted attack exfiltration prevention platform. The Platform includes all Documentation.

1.6. "**Territory**" means North America.

2. **Resale of Platform**

2.1. Resale License in the Territory. Subject to the terms and conditions of this Agreement, Reseller shall have, during the Term (as defined below), the non-exclusive non-sublicensable, nontransferable limited right to promote, market and resell the Platform to Customers in the Territory.

Nothing in this Agreement shall be deemed to prohibit the Company from directly or indirectly dealing with, selling, licensing, leasing, renting or otherwise distributing the Platform (within or outside the Territory) to its distributors, resellers, end users and/or any other third party, and Reseller shall not have and hereby irrevocably and unconditionally waives any claim and/or demand in contradiction

with its undertakings herein.

2.2. End User License Agreement. The Platform shall be distributed by Reseller to Customer subject to Company's then current End User License Agreement. Reseller shall deliver to Company a hard copy of each executed End User License Agreement prior to delivery to and installation of the Platform for the applicable Customer. Reseller shall not grant to Customer any rights to the Platform in excess of the rights set forth in the End User Agreement. The effective date of each End User Agreement shall be the date on which the Customer has been provided with a License Key. Reseller shall (i) make each End User aware of the End User Agreement prior to the use or installation of the Software and, (ii) promptly report to Company in writing any breach, or suspected breach, of the End User Agreement Upon termination or expiration of any End User License Agreement, Reseller shall promptly instruct the applicable Customer to immediately discontinue use of the Platform. Reseller shall ensure that Company's End User License Agreement and any End User License Agreement accompanying the Platform is not tampered with or removed from the Platform.

2.3. Use of Trademarks. During the Term, Company grants Reseller a non- exclusive right to use and display Company's trademarks, trade names, service marks and logos (collectively, "**Trademarks**") within the Territory solely to the extent reasonably necessary for the marketing and promotion of the Platform in accordance with the terms and conditions of this Agreement. Company shall retain sole ownership of the Trademarks and all goodwill associated therewith or arising out of such marketing and promotion activities provided that: (i) Reseller conspicuously indicates in all such media that such names are Trademarks of Company and its licensors, (ii) Reseller complies with Company's written guidelines and instructions on such use and display, as promulgated by Company from time to time, and (iii) that Reseller submits all such media to Company for Company's prior written approval. Company will

DocuSign Envelope ID: EA038A75-9B15-4197-B83A-5F70AA5B0795

retain sole ownership of the Trademarks and all goodwill associated therewith or arising out of such marketing activities. Nothing contained in this Agreement shall give Reseller any interest in such Trademarks. Reseller agrees that it will not, at any time during or after the Term, claim any interest in, attempt to register in any jurisdiction in the Territory, nor do anything that may adversely affect the validity or enforceability of, any Trademarks.

2.4. <u>Platform Changes</u>. Company shall have the right to make design modifications to the Platform at any time.

2.5. <u>Audit Rights</u>. Reseller shall maintain full and complete records of the distribution of Platform for at least two (2) years after the distribution of such Platform. Company shall, at any time during the period when Reseller is obliged to maintain such books, records, be entitled to audit such books, records and inventory upon thirty (30) day written notice in order to confirm Reseller's compliance with this Agreement; provided, that no more than one such audit may be conducted in any six month period.

2.6. <u>Use License</u>. Subject to the terms and conditions of this Agreement, during the Term Company hereby grants Reseller a nonexclusive, nonsublicensable, nontransferable license to use the Platform, in object code format only, and the Documentation solely for the purpose of: (i) demonstrating the Platform to prospective Customers, (ii) if pre-approved by the Parties in writing, installing the Platform for Customer according to Company's instructions, and (iii) providing training in the use of the Platform to Reseller's employees. To the extent that a potential Customer will request to be granted with a proof-of-value license in order to evaluate the Platform ("**PoV License**"), such grant of POV License and its duration shall be subject to Company's prior written approval. If approved by the Company, such approved PoV License will be subject to an evaluation agreement to be executed between Company and such potential Customer.

**3.    Restrictions**
Except to the extent expressly permitted under this Agreement, Reseller may not, nor permit any person, or entity under its control, nor any third party, (including without limitation, Customers) to directly or indirectly: (a) access the Platform for purposes of monitoring its availability, performance or functionality, or for any benchmarking or competitive purposes; (b) modify or make derivative works based upon the Platform; (c) copy, modify,

alter, reverse translate, decompile, disassemble or otherwise reverse engineer or attempt to obtain or create the source code of the Platform by any means whatsoever; (d) use, distribute, copy, duplicate, or otherwise reproduce all or any part of the Platform for any unlawful purpose or any purpose other than the purposes set forth in this Agreement; (e) develop methods to enable unauthorized parties to access or use the Platform, or to develop any other product containing any of the concepts and ideas contained in the Platform; (f) remove, deface, obscure or otherwise modify any copyright or other proprietary notices included on or in the Platform; (g) interfere with or disrupt the integrity or performance of the Platform, or the data contained therein; (h) work around, avoid or disable any technical limitations in the Platform, or use any tool to enable features or functionalities that are otherwise disabled in the Platform; or (i) publish any reviews, testing information or comparisons of the Platform without the prior written consent of Company. Reseller shall promptly notify Company of any actual or suspected violation of the terms of this Section 3 and of any actual or suspected infringement or unauthorized use of the Platform that Reseller becomes aware of and shall assist Company in its efforts to remedy, prevent or prosecute such infringement or unauthorized use.

**4.    Reseller's Responsibilities**
4.1. <u>Marketing</u>. During the Term, Reseller shall use its best efforts to market and promote the Platform in the Territory for the purpose of attaining the highest volume of sales, providing broad and positive exposure for the Platform in the Territory, following up potential Customers, visiting Customers and attending trade shows. At all times, Reseller shall enhance Company's business reputation and interests. Reseller further agrees to comply with good business practices and all applicable laws and regulations applicable in the Territory. Without derogating from the above, Reseller shall comply with the marketing plan specified in Exhibit A (if any) attached hereto.

4.2. <u>Advertising Material</u>. Any advertising or other material prepared by Reseller in connection with the Platform or Company shall be subject to the prior written approval of Company, which shall not be unreasonably withheld. Reseller shall not use and shall withdraw and retract any promotion or advertising materials that the Company finds unsuitable or to be in breach of the terms of this Agreement.

4.3. <u>Authorizations</u>. Reseller shall, at its own expense, make, obtain, and maintain in force at all times during the Term, all filings, registrations, reports, licenses, permits and authorizations required under applicable law for Reseller to perform its obligations

DocuSign Envelope ID: EA038A75-9B15-4197-B83A-5F70AA5B0795

under this Agreement.

4.4. Government Acquisition Regulations. If Reseller is using or distributing any Company material or the Platform to, or on behalf of, any unit or agency any government, then Reseller will ensure that such government's use of those items is governed by the terms and conditions set forth in the End User License Agreement.

4.5. Support. To the extent agreed by the Parties, Reseller shall be solely responsible for providing the support to Customer as specified in **Exhibit B** attached hereto.

4.6. Reseller Requirement. During the Term Reseller will comply with the MSP Purchasing Program requirements specified in **Exhibit C** attached hereto.

5. **Insurance.**
Reseller shall, at its own cost and expense, obtain and maintain in full force and effect, with sound and reputable insurers, during the Term and for two (2) years thereafter, the following minimum insurance coverage and limits: (i) Employer's Liability; (ii) Professional Indemnity (Errors & Omissions), with coverage of two million US dollars ($2,000,000) per claim and in the aggregate, and (iii) General Liability (or the equivalent policies as they may be called in the Territory or relevant jurisdiction), each with a limit of two million US dollars (US $2,000,000) (or, if applicable, the equivalent value in the currency of the Territory), including public, contractual, fire, legal and product liability per occurrence or claim, without geographical limit. Such policies shall name Company, its affiliates, and their respective officers, directors, employees, agents and contractors as additional insured. Such policies shall apply on a primary and non-contributory basis to any other insurance to the extent necessary for Reseller to meet its obligations under this Agreement. Reseller shall provide Company with certificates of insurance evidencing such coverage required within thirty (30) days of request by Company.

6. **Purchase Order, Fees and Payments**

6.1. Purchase Order. During the Term, Reseller will place with Company purchase orders for the Platform licenses ordered by a Customer ("**Purchase Order**"). Each Purchase Order shall include the following details: (i) the type and number of licenses for the Platform, (ii) the name, address, telephone number, facsimile number, email address, and other relevant contact information for the Customer; and (iii) a copy of each purchase order submitted by the respective Customer to the Reseller. Following Company's acceptance of the Purchase Order, Company shall issue a license for the Platform to the Reseller by means of a License Key.

6.2. Fees. Reseller shall pay Company for each license and any service relating to the Platform fees as specified in **Exhibit C** (the "**Fees**"). Customer's use and access of the Platform is subject to Company's receipt of the applicable Fees.

6.3. Sale Price. Reseller shall only distribute the Platform on competitive terms. Company shall make available to the Reseller its recommended prices (excluding VAT, sales tax or similar taxes) for the licenses to use the Platform. Reseller is responsible for the collection of all sums due from Customers at Reseller's expense.

6.4. Payment Terms. Reseller shall pay the Fees to Company in U.S. Dollars within thirty (30) days of issuance of Company invoice therefor. Any amounts payable by Reseller hereunder which remain unpaid after the due date as set forth in Section 6.4 shall be subject to the payment of interest in an amount equal to one and one-half percent (1.5%) per month (or the highest amount permitted by law, if less), accruing from the due date until the amounts due and payable hereunder are paid to Company in full

6.5. Reseller Expenses. Reseller shall be responsible for all expenses incurred by Reseller in the course of exercising any of its rights, obligations or responsibilities arising under this Agreement.

6.6. Taxes. Company assumes no obligation for the payment of local or foreign taxes, other duties and excise taxes, now or hereafter applied on the sale, transportation, import, export, licensing or use of the Platform, including sales tax, value added tax, withholding tax or similar tax (including interest and penalties thereon), paid or payable at any time thereon. If under any applicable laws Reseller is required to deduct or withhold any tax on payment, then the amount of the payment will be increased to offset such tax, such that the amount actually remitted to Company, net of all taxes, equals the amount invoiced or otherwise due. Reseller shall deliver to Company all original tax receipts or certified copies or other documentation with respect to the payment of such taxes.

6.7. No Set off. All amounts payable hereunder shall be due and payable as specified herein and shall not be subject to any set-off or deduction.

6.8. All amounts, Fees and prices payable to the Company under this Agreement are excluding of VAT, and Reseller shall add VAT at the applicable rate to any payment made to the Company.

7. **Ownership**

7.1. Ownership. Title to and ownership of the Platform and Documentation, and any improved, updated, modified and/or additional parts thereof (regardless of whether such improvements, updates, upgrades,

DocuSign Envelope ID: EA038A75-9B15-4197-B83A-5F70AA5B0795

modifications and/or additional parts were made and/or developed pursuant to the request and/or specifications of Reseller and/or Customer, and irrespective of any support and/or assistance Company may, will or had received from Reseller, or any third party on its behalf, with respect thereto), and all copyright, patent, trade secret, trademark and other intellectual property rights embodied in the Platform, shall at all times remain the property of Company or Company's licensors. Nothing in this Agreement shall constitute a waiver of Company's intellectual property rights under any law, or be in any way construed or interpreted as such. The use by Reseller of such rights is authorized only for the purposes herein set forth and upon termination of this Agreement for any reason, such authorization will cease. Any right not expressly granted to Reseller in this Agreement, is hereby reserved by Company.

7.2.  Feedback.  Reseller shall provide prompt written notification of any comments (including any suggested modifications, design changes, or improvements of the Platform) or complaints about the Platform that are made by Customer(s), and of any problems with the Platform or their use that Reseller becomes aware of.  Such written notification shall be the sole property of Company, shall be considered Company's Confidential Information hereunder and Company shall have and is hereby irrevocably and unconditionally assigned any and all right, title, and interest in and to any such written notifications, without the payment of any consideration therefor and waives any and all moral rights that Reseller may have in respect thereto.

7.3.  Third Party Software. Portions of the Platform include third party open source software that is subject to third party terms and conditions ("**Third Party Terms**").  A list of any third party open source software and related Third Party Terms is available in the Platform notice.txt file. If there is a conflict between any Third Party Terms and the terms of this Agreement, then the Third Party Terms shall prevail but solely in connection with the related third party open source software. Notwithstanding anything in this Agreement to the contrary, Company makes no warranty or indemnity hereunder with respect to any open source software.

**8.   Confidentiality**

8.1.  Each Party agrees to retain in confidence all information disclosed by a Party to the other Party pursuant to this Agreement, in any manner, which is either designated as proprietary and/or confidential, or by the nature of the circumstances surrounding disclosure, should reasonably be understood to be confidential (the "**Confidential Information**").  For clarity, any information in connection with the Platform shall be deemed as Company's Confidential Information. Each Party agrees to:  (a) preserve and protect the other Party's Confidential Information in confidence and shall safeguard the other Party's Confidential Information with at least the same degree of care that it takes to protect its own information of a similar nature, which in no event shall be less than a reasonable standard of care; (b) refrain from using the other Party's Confidential Information except for the purpose of performing its obligations under this Agreement; and (c) not disclose such Confidential Information to any third party except to employees and contractors as is reasonably required in connection with the exercise of its rights and performance of its obligations under this Agreement (and only subject to binding use and disclosure restrictions which are at least as protective as those set forth herein and which are agreed to in writing by such employees).   Confidential Information shall not include any information which is shown by the receiving party that such information is: (i) in the public domain through no wrongful act of the receiving party; (ii) independently developed by the receiving party without reference to or use of the Confidential Information of the disclosing party; and/or (iii) rightfully obtained by the receiving party from a third party free of any obligation to such third party to keep it confidential. Notwithstanding the above, the receiving party may disclose Confidential Information if required to do so by law or court order provided, however, that the receiving party shall make the best effort to provide prompt written notice of such court order or requirement to the disclosing party to enable the disclosing party to seek a protective order or otherwise prevent or restrict such disclosure.  Neither Party shall disclose any of the terms of this Agreement to any third party without the prior written consent of the other party; provided, however, that either party may disclose the existence of this Agreement to any third party and either party may disclose the terms of this Agreement:  (i) to legal counsel of the parties; (ii) in confidence, to accountants, banks, and financing sources and their advisors solely for the purposes of a party's securing financing; (iii) in connection with the enforcement of this Agreement or rights under this Agreement; or (iv) in confidence, in connection with an actual or proposed merger, acquisition, or similar transaction solely for use in the due diligence investigation in connection with such transaction.

The Parties acknowledge that unauthorized disclosure or use of Confidential Information may give rise to irreparable injury, which may not be adequately compensated by damages. The Parties agree and acknowledge that money damages may not be a sufficient remedy for any breach or

DocuSign Envelope ID: EA038A75-9B15-4197-B83A-5F70AA5B0795

threatened breach of this Agreement by the receiving party and that the disclosing party shall be entitled to seek specific performance or injunctive relief (as appropriate) as a remedy for any breach or threatened breach thereof, in addition to any other remedies available at law or in equity.

## 9. Term and Termination

9.1. Term. This Agreement shall become effective as of the Effective Date and will remain in force for a period of one (1) year (**"Initial Term"**). Following the Initial Term this Agreement shall automatically renew for successive one (1) year terms (each **"Renewal Term"**), unless one Party provides written notice to the other Party within ninety (90) days prior to the expiration of the then current Renewal Term of its intention not to renew this Agreement. The Initial Term along with any Renewal Term is referred to herein as the "**Term**". Without derogating from the above, following the Initial Term, either Party may terminate this Agreement upon 90 day written notice to the other Party.

9.2. Termination for Breach. Either Party may terminate this Agreement immediately upon written notice if: (a) the other Party is in breach or default of any obligation hereunder, which breach or default is not cured within thirty (30) days of receipt of written notice from the non-breaching party; (b) the other Party breaches an obligation under this Agreement which it is not entitled to cure, as specified herein, or which breach, by its nature, cannot be cured; (c) in the case of a breach by Reseller, a breach of Sections 3 (Restrictions), 7(Ownership) or 8(Confidentiality); (d) the other Party becomes the subject of any proceeding under any bankruptcy, insolvency or liquidation law, whether domestic or foreign and whether voluntary or involuntary, unless dismissed within sixty (60) days of commencement thereof; or (e) according to the provisions of Section 13.5 (Compliance – Termination) below.

9.3. Effect of Termination. Upon any termination of this Agreement: (a) Reseller shall cease to market, promote and sell the Platform and cease to use any Trademarks, and all rights and licenses granted to Reseller pursuant to this Agreement shall automatically terminate; (b) Reseller shall cease to use all intellectual property of Company; (c) Reseller shall pay Company all amounts due and outstanding hereunder in accordance with the terms of this Agreement but not later than thirty (30) days from the last day of the month in which termination or expiration is effective; and (d) Reseller shall immediately (i) return to Company all Company Confidential Information, marketing materials, catalogues and literature in its possession, custody or control in whatever form held (including all copies or

embodiments thereof), and (ii) in the case of digital material or other material which would remain in Reseller's possession following such a return, destroy such material and confirm to Company that such has been accomplished. Termination of this Agreement for any reason will not affect the rights and obligations of Customers under valid and existing End User License Agreement, for so long as such rights and obligations remain valid and existing ("Surviving Licenses"). Following termination of this Agreement, Company and Reseller will continue their obligations for the purposes of providing support with regard to Surviving Licenses for the duration of the applicable Surviving License.

9.4. Survival. This Section 9.4 and Sections 1 (Definitions), 3 (Restrictions), 5 (Insurance) 6.2 (Fees), 7 (Ownership), 8 (Confidentiality), 9.3 (Effect of Termination), 10 (Warranties and Disclaimer), 12 (Limitation of Liability), 13 (Compliance) and 14 (General), as well as any provisions which by their nature are intended to survive termination or expiration of this Agreement, shall survive the expiration or termination of this Agreement.

## 10. Warranties and Disclaimer

10.1. Mutual Warranties. Each Party warrants to the other that it has the power and authority to enter into and perform its obligations under this Agreement.

10.2. Reseller Warranties. Reseller warrants and represents that:

10.2.1. it is duly registered and validly existing in its jurisdiction of organization with full corporate power, authority and financial capability to enter into and perform its obligations under this Agreement, and this Agreement constitute the legally binding obligations of Reseller and it is enforceable against Reseller in accordance with its respective terms;

10.2.2. it possesses the know-how, expertise, experience, skilled manpower, financial and other means useful and required to act as a Reseller of the Platform in accordance with the terms of this Agreement and to timely and fully fulfill all of its undertakings under this Agreement;

10.2.3. it shall comply with all legal requirements from time to time relating to the marketing, distribution of the Platform in the Territory; and

10.2.4. in entering into this agreement, Reseller has not relied on any promises or representations other than those promises or representations expressly made in writing in this Agreement.

EXCEPT FOR ANY WARRANTIES MADE

DocuSign Envelope ID: EA038A75-9B15-4197-B83A-5F70AA5B0795

DIRECTLY TO CUSTOMERS PURSUANT TO THE END USER LICENSE AGREEMENT, THE PLATFORM IS PROVIDED BY COMPANY "AS-IS" AND "AS-AVAILABLE" AND COMPANY DOES NOT MAKE ANY WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO ANY PRODUCT, LICENSE OR SERVICE AND HEREBY DISCLAIMS ALL STATUTORY OR IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. COMPANY DOES NOT WARRANT THAT: (I) THE OPERATION OF THE PLATFORM WILL BE UNINTERRUPTED OR ERROR-FREE; (II) THE FUNCTIONS CONTAINED IN THE PLATFORM WILL RUN PROPERLY ON ALL HARDWARE NOR THAT IT WILL MEET RESELLER'S AND/OR ANY CUSTOMER'S REQUIREMENTS OR OPERATE IN THE COMBINATIONS WHICH MAY BE SELECTED FOR USE BY RESELLER AND/OR A CUSTOMER; (III) ANY STORED DATA WILL BE ACCURATE OR RELIABLE, OR WILL NOT BE LOST, DAMAGE OR CORRUPTED, AND/OR (IV) ERRORS OR DEFECTS WILL BE CORRECTED, PATCHES OR WORKAROUNDS WILL BE PROVIDED, OR COMPANY WILL DETECT EVERY BUG IN THE PLATFORM.

**11.** **Indemnity**

11.1. Company's Indemnity Obligation. Company shall, at its expense, defend and hold harmless Reseller from and against any third party claim, action, suit or proceeding alleging that the Platform as provided by Company to Reseller, when used pursuant to Company's instructions and in conformity with the Documentation, infringes such third party's copyrights or trade secrets within the Territory ("Infringement Claim"), and Company shall pay all costs, liabilities, damages and reasonable attorney's fees awarded against Reseller by a court of competent jurisdiction, valid arbitrator or arbitration panel, or other authorized tribunal, or paid by Reseller in settlement of such Infringement Claim.

11.2. Exceptions. Notwithstanding any other provision of this Agreement, Company will have no indemnification obligation and/or liability to Reseller for any Infringement Claim based on or related to: (a) Company's compliance with Reseller's or a Customer's specifications or directions, including the incorporation of any software or other materials or processes provided by or requested by Reseller or a Customer; (b) use of the Platform other than as specified in or in violation of this Agreement or in the applicable Documentation, if such infringement

would have been avoided but for such use; (c) use of prior versions of the Platform after a new version has been provided by Company, if such infringement would have been avoided if the most up-to-date version of the Platform had been used; (d) the combination or use of the Platform with software, hardware or other materials not furnished by Company, if such infringement would have been avoided by use of the Platform alone; or (e) use of the Platform in violation of Company's instructions, including but not limited to, pursuant to Section 11.3 below; and in case of each of the events specified above Reseller shall defend Company, and its officers, directors and employees, against any such action, and Reseller shall pay all settlements entered into, and all judgments and costs (including reasonable attorneys' fees) awarded against Company in connection with any such action.

11.3. Remedy for Infringement. Without derogating from the obligations set forth in Section 11.1, if Company believes that the Platform, or any part thereof, may infringe third party rights, then Company may in its sole discretion: (i) procure the right to continue to use the Platform; (ii) replace or modify the allegedly infringing part of the Platform so that it becomes non-infringing while giving substantially equivalent performance; or (iii) require, if Company determines that the foregoing remedies are not reasonably available, that use of the (allegedly) infringing Platform (or part thereof) shall cease and Company will reimburse to Reseller any amounts which Reseller actually refunds to the Customers due to such circumstances, up to the pre-paid license fee paid by the Customer for the remaining unused period of the Customer license period.

11.4. THE FOREGOING STATES THE ENTIRE LIABILITY OF COMPANY AND RESELLER'S SOLE REMEDY FOR ANY INFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS.

11.5. Reseller Indemnification. Reseller will indemnify and hold harmless Company from and against any third party claim, demand, action, suit, proceeding, damages, losses and/or liability arising from or related to (a) Reseller's breach of any of its obligations, representations and warranties under this Agreement; and/or (ii) negligence, misrepresentation, error, omission or acts of the Reseller.

11.6. Indemnification Conditions. The defense and indemnification obligations of the indemnifying party under this Section 11 are subject to: (i) the indemnifying party being given prompt written notice of the claim; (ii) the indemnifying party being given immediate and complete control over the defense and/or settlement of the Claim; and (iii) the indemnified party providing cooperation and assistance, at the indemnifying party's expense, in

DocuSign Envelope ID: EA038A75-9B15-4197-B83A-5F70AA5B0795

the defense and/or settlement of such claim and not taking any action that prejudices the indemnifying party's defense of or response to such Claim. Notwithstanding the foregoing, no claim shall be settled without the indemnified party's consent, such consent not being unreasonably withheld.

**12.** **Limitation of Liability**

12.1. IN NO EVENT SHALL COMPANY, ITS AFFILIATES OR LICENSORS BE LIABLE TO RESELLER FOR ANY INCIDENTAL, INDIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, EXEMPLARY OR SIMILAR DAMAGES OR LOST PROFITS (INCLUDING WITHOUT LIMITATION, DAMAGES FOR COSTS OF PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES, LOSS OF BUSINESS, REVENUE, CONTRACTS, DATA, GOODWILL OR REPUTATION, BUSINESS INTERRUPTION AND THE LIKE) OF ANY KIND, WHETHER FORESEEABLE OR UNFORESEEABLE, ARISING DIRECTLY OR INDIRECTLY, OUT OF, OR IN CONNECTION WITH, THIS AGREEMENT, THE USE OR INABILITY TO USE THE PLATFORM AND/OR THE PERFORMANCE OR FAILURE OF THE PLATFORM, WHETHER ARISING OUT OF CONTRACT, TORT (INCLUDING NEGLIGENCE) STRICT LIABILITY OR OTHERWISE, AND EVEN IF COMPANY, ITS AFFILIATES OR LICENSORS HAVE BEEN ADVISED OF THE POSSIBILITY OF ANY SUCH LOSSES OR DAMAGEES.

12.2. IN NO EVENT SHALL THE AGGREGATE LIABILITY OF COMPANY (INCLUDING ITS AFFILIATES OR LICENSORS) IN CONNECTION WITH THIS AGREEMENT, FOR ANY AND ALL CLAIMS WHATSOEVER AND REGARDLESS OF THE BASIS OF THE FORM OF THE ACTION, EXCEED THE TOTAL AMOUNTS ACTUALLY RECEIVED BY COMPANY FROM RESELLER DURING THE TWELVE (12) MONTH PERIOD IMMEDIATELY PRECEDING THE DATE ON WHICH A CLAIM IS BROUGHT. SOME JURISDICTIONS MAY NOT ALLOW THE LIMITATION OR EXCLUSION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY IN CERTAIN INSTANCES.

**13.** **Compliance**

13.1. Compliance with Laws. Reseller hereby represents and warrants that it complies and shall comply with all applicable laws, rules and regulations applicable to performance of the contemplated activities pursuant to this Agreement in any applicable country or jurisdiction. Reseller shall obtain and keep current all governmental permits, certificates and licenses necessary for performance of the contemplated

activities. Reseller shall, upon Company's request, provide evidence reasonably satisfactory to Company of its compliance with this Section 13.1.

13.2. Compliance with Anti-Corruption and Anti-Bribery Laws. Reseller hereby represents and warrants that it is fully aware of any applicable anti-corruption and non-bribery laws and regulations of any country or lawful authority exercising jurisdiction over the contemplated activities hereunder. Further, in the provision and the performance of the services under the engagement herein, Reseller shall not: (a) perform any action that is prohibited by any anti-corruption laws that may be applicable to the Company and/or to Reseller; (b) directly or indirectly, make any payment, or offer or transfer anything of value, or agree or promise to make any payment or offer or transfer anything of value, to a government official or government employee, to any political party or any candidate for political office or to any other third party, with the purpose of influencing decisions related to the Company and/or its business in a manner that would violate any anti-corruption law; and (c) retain any government official or government employee in the performance of this Agreement. In addition, Reseller hereby undertakes to: (i) immediately advise the Company in writing in the event that you shall become aware that any person engaged in the performance of this Agreement or any transaction related to it becomes a government official or employee, a political party official or a candidate for political office, (ii) provide Reseller employees (if any), on an annual basis, training with respect to compliance with anti-corruption laws, and (iii) maintain and provide the Company and its auditors and other representatives with access to records (financial and otherwise) and supporting documentation related to the subject matter of this Agreement as may be requested by the Company in order to document or verify compliance with the provisions of this Section 13.2.

13.3. Compliance with Export Control Laws. Reseller hereby represents and warrants that it is fully aware of any applicable export control laws and regulations of the State of Israel and the USA and any other country exercising jurisdiction over the contemplated activities hereunder. Without limiting the foregoing (i) each Party will obtain all licenses and other consents applicable to it, required for the export of the Platform or any of the Company's products and services under any applicable law; (ii) Reseller will perform the contemplated activities hereunder in compliance with the terms of all applicable export licenses or other consents and permits or authorizations received from or issued by any relevant governmental or regulatory authority that has jurisdiction over contemplated activities

DocuSign Envelope ID: EA038A75-9B15-4197-B83A-5F70AA5B0795

hereunder.

Reseller acknowledges that certain sale of the Company's products or services to a Customer may be subject to the approval of the Israeli Defense Export Control Agency and such Customer shall be required to sign certificates and other documents as may be requested by the State of Israel from time to time.

13.4. Indemnification. Reseller shall indemnify and hold Company harmless from and against any and all claims, liabilities, losses, damages or judgments, including all reasonable legal fees and expenses related thereto, that arise from or are connected with any breach of any of the provisions set forth in sections 13.1-13.4 above.

13.5. Termination. Without derogation from the provisions of Section 9 (Term and Termination), Company may terminate this Agreement upon 7 day prior written notice in case of any change in law or policy or regulation of the Israeli Ministry of Defense which might affect Company's business, and Reseller shall have no claims regarding such termination.

**14.** **General**

14.1. Force Majeure. Neither Party will be responsible for any failure or delay in its performance under this Agreement (except for any payment obligations) due to causes beyond its reasonable control, including, but not limited to, labor disputes, strikes, lockouts, shortages of or inability to obtain labor, energy, raw materials or supplies, war, terrorism, riot, acts of God or governmental action.

14.2. Independent Contractors. The relationship of Company and Reseller established by this Agreement is that of independent contractors, and nothing contained in this Agreement shall be construed: (i) to grant either Party the power to direct or control the day-to-day activities of the other; or (ii) as establishing the Parties as partners, joint ventures, co-owners or otherwise as participants in a joint or common undertaking. Company is in no manner associated with or otherwise connected with the actual performance of this Agreement on the part of Reseller, nor with Reseller's employment of other persons or incurring of other expenses.

14.3. Reseller's Employees. Reseller is solely responsible for all of its employees and agents, its labor costs and expenses arising in connection therewith and for any and all claims, liabilities or damages or debts of any type whatsoever that may arise on account of Reseller's activities, or those of its employees or agents in the performance of this Agreement.

14.4. Governing Law and Jurisdiction. This Agreement and the entire relationship between the Parties shall be governed by and construed in accordance with the laws of the New York exclusive of its conflict of laws principles. Any dispute arising under or relating to this Agreement shall be resolved in and subject to the exclusive jurisdiction of the courts located in New York County, and the parties hereby expressly consent to such jurisdiction and venue, and waive any jurisdictional, venue or inconvenient forum objections with respect thereto. Notwithstanding the foregoing, Company shall be entitled to seek injunctive relief in any jurisdiction. The United Nations Convention on Contracts for the International Sale of Goods shall not apply to this Agreement.

14.5. Notices. All notices, consents and other communications required or permitted to be given under this Agreement will be in writing and delivered by confirmed email or facsimile transmission, by courier or overnight delivery service, or by certified mail, and in each instance will be deemed given upon receipt. All communications will be sent to the addresses set forth above or to such other address as may be specified by either party to the other Party in accordance with this Section 14.5.

14.6. Assignment. Company may assign or transfer this Agreement upon notice to Reseller. Reseller may not assign or transfer this Agreement without the prior written consent of Company. Unauthorized assignments shall be null and void.

14.7. Non-Solicitation. During the term of this Agreement and for a period of one (1) year thereafter, neither Party shall, without the other Party's written consent, affirmatively solicit the employees of such Party. In the event either Party breaches this provision and affirmatively solicits and hires an employee of the other Party, they shall be liable to such Party for an amount equal to thirty percent (30%) of the annual base compensation of the relevant employee in his/her new position.

14.8. Entire Agreement; Amendments; Severability and Waiver. This Agreement together with the exhibits hereto constitutes the complete and exclusive agreement between the Parties concerning its subject matter and supersedes all prior or contemporaneous agreements or understandings, written or oral, concerning the subject matter of this Agreement. In case of any conflicts between the terms and conditions of this Agreement and any exhibit, the terms and conditions of this Agreement shall prevail. This Agreement may not be modified or amended except in a writing signed by a duly authorized representative of each Party. If any provision of this Agreement is held to be invalid or unenforceable, (i) the remainder will remain in full force and effect, and (ii) the invalid provision shall be substituted with a provision that most closely approximates the original legal and economic effect of the invalid provision. The waiver by either Party of any default

DocuSign Envelope ID: EA038A75-9B15-4197-B83A-5F70AA5B0795

or breach of this Agreement will not constitute a waiver of any other or subsequent default or breach. Any waiver must be in writing and duly signed by the waiving party.

14.9.    Counterparts. This Agreement may be executed in two (2) counterparts, each of which will constitute an original, and both of which will constitute one and the same instrument. Signatures by facsimile or signatures which have been scanned and transmitted by electronic mail shall be deemed valid and binding for all purposes.

DocuSign Envelope ID: EA038A75-9B15-4197-B83A-5F70AA5B0795

**ENSILO INC.**

Security Validation LLC

---

DocuSigned by:

*[signature]*

Signature  5C4C656540CB4F7...

Brett Wilson

Printed Name

---

DocuSigned by:

David Durko

Signature  685EA5D2F0FC461...

David Durko

Printed Name

---

Vice President of Sales

Title

CEO

Title

---

12/29/2016

Date

12/29/2016

Date

---

**Exhibits:**

1. Exhibit A – Marketing Plan
2. Exhibit B – Support Obligations
3. Exhibit C – MSP Purchasing Program